

_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Robert Anthony Griffin | * | Case No. 12-19863-RAG |
| | | Chapter 13 |
| Debtor | * | |
| * * * * * * * | | |
| Federal National Mortgage Association c/o OneWest Bank, F.S.B. (d/b/a Financial Freedom, a Division of OneWest Bank, F.S.B.) | * | |
| | * | |
| | * | |
| Movant/Objector | * | |
| v. | * | |
| Robert Anthony Griffin | * | |
| Respondent | * | |
| * * * * * * * * * * * * * * * | | |

**AMENDED MEMORANDUM OPINION DENYING FEDERAL
NATIONAL MORTGAGE ASSOCIATION'S MOTION FOR RELIEF
FROM STAY AND OVERRULING FEDERAL NATIONAL MORTGAGE
<u>ASSOCIATION'S OBJECTION TO CONFIRMATION OF PLAN</u>**

1

I.      **Preliminary Statement**

This dispute draws into question the ability of a Chapter 13 debtor to utilize 11 U.S.C. § 1322(c)(2)[1] to modify the payment of a secured claim that arises from the type of consumer financing known as a "reverse mortgage". For the reasons explained below, the Court concludes that such modification is permitted by that subsection of the Code. Therefore the automatic stay shall remain in place, the objections of the mortgage holder shall be overruled and the Debtor's plan shall proceed to a final confirmation hearing.[2]

II.     **Procedural History**

Debtor Robert Anthony Griffin filed his Voluntary Petition for Relief on May 24, 2012. On June 7, 2012, Federal National Mortgage Association (FNMA) filed its Motion for Relief from Stay (Motion for Relief) (Dkt. No. 10) and then, on July 26, 2012, followed the Motion for Relief with the filing of its Objection to Confirmation of Debtor's Proposed Chapter 13 Plan (Objection) (Dkt. No. 25). Mr. Griffin filed his Response to Motion for Relief from Automatic Stay (Dkt. No. 14) on June 19, 2012. At a preliminary hearing held on August 24, 2012, the Court requested that the parties submit legal memoranda and a continued hearing date of October 3, 2012 was scheduled. The Debtor's Memorandum in Support of Response to Motion for Relief from Automatic Stay (Dkt. No. 32) was timely filed on September 21, 2012. However, FNMA's Memorandum in Support of Creditor's Objection to Confirmation of Debtor's Proposed Chapter 13 Plan and Motion for Relief from Automatic Stay (FNMA's Memorandum) (Dkt. No. 35) was unfortunately not filed until the day of the continued hearing. The hearing was therefore

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code) found at Title 11 of the United States Code.

[2] This amended opinion is entered to correct drafting errors.

2

continued again to December 5, 2012 to allow the Debtor and the Court to consider FNMA's Memorandum. At the conclusion of that hearing, the Court took the matter under advisement.

### III.    Factual Background

The facts are simple and uncontested. 5218 Fredcrest Road, Baltimore, Maryland 21229 (Fredcrest Road) was formerly owned by the Debtor's late mother, Dora Lee Griffin (Ms. Griffin). Before Ms. Griffin died, she executed (on May 7, 2007) an Adjustable Rate Note (Note) and an Adjustable Rate Home Equity Conversion Deed of Trust (Deed of Trust) in favor of FNMA. The Deed of Trust is the reverse mortgage. The Debtor was not a party to either document and, before his mother's death, had no direct ownership interest in Fredcrest Road. Hence, his bundle of rights accrues solely on the basis of his status as his mother's heir.

The Note does not incorporate a normal monthly payment schedule of principal and interest. Instead, the payment terms call for (a) interest payments (with the calculation permitted to adjust every month) and (b) payment of all outstanding principal and interest due upon the happening of certain conditions set forth in the Note. One such condition is when the, "Borrower dies and the Property is not the principal residence of at least one surviving Borrower" (Acceleration Clause). Mot. for Relief, Ex. 3, ¶ 7(A)(i).[3] Sadly, Mrs. Griffin, the only borrower, passed away on March 8, 2011. Thereafter, the Acceleration Clause was invoked by FNMA and a foreclosure was docketed on March 14, 2012.

The Debtor is the personal representative of Ms. Griffin's estate and fifty *per cent* (50%) co-heir with his sister. Debtor currently resides at Fredcrest Road and it is undisputed that it is his principal residence. According to FNMA's proof of claim, as of the Petition Date, the full amount due and owing under the Note and the Deed of Trust was $62,602.81. By contrast, the

---

[3] The Deed of Trust includes an identical provision.

Debtor asserts (relying upon an estimate of value from the Internet service, www.zillow.com) that Fredcrest Road is worth $117,500.  FNMA does not contest that figure.  Thus, the real estate appears to have substantial equity over and above the debt.

Debtor's Chapter 13 Plan (Plan) (Dkt. No. 18), filed on June 20, 2012, seeks to pay the amount due over time, in effect claiming a statutory right to modify the payment terms of the secured claim pursuant to the joint operation of Sections 1322(c)(2) and 1325(a)(5).  FNMA relies upon the Acceleration Clause and, on that basis, claims an immediate right to payment of all sums due under the Note.  FNMA's Memorandum asserts that (1) the relevant provisions of the Code do not permit modification because the loan has already been accelerated and Fredcrest Road is the Debtor's principal residence and (2) as the Debtor's sister, his co-heir, is not a debtor in bankruptcy, a necessary party is lacking and it would be inappropriate to modify the payment terms of the secured claim without her presence in the case.  Therefore, FNMA contends, the default cannot be decelerated and FNMA is entitled to immediate payment of all sums due. In lieu of full payment, FNMA asserts the unfettered right to foreclose.  On October 31, 2012, Debtor filed an Amended Chapter 13 Plan (Amended Plan) (Dkt. No. 39) that proposed to pay FNMA $62,602.81 over forty-seven (47) months at an interest rate of 1.21%.  As the Court was drafting this Opinion, Debtor submitted a Second Amended Chapter 13 Plan (Dkt. No. 44) which raised the proposed interest rate to five *per cent* (5%).

**IV.   Jurisdiction**

This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157(b)(2)(G)&(L) and 1334 and Local Rule 402 of the United States District Court for the District of Maryland.

**V.   Legal Analysis**

    A.    *Modification of the Payment Terms of the Secured Claim Under Section 1322(c)(2).*

FNMA's contends that the Debtor may not modify the payment terms of its Note and Deed of Trust by way of his Chapter 13 plan.[4]  FNMA argues that, "such is disallowed by lack of ability to cure a loan that has already matured [and] lack of ability to modify a secured loan of principal (sic) residence… ." FNMA's Mem. 3.  In that regard, Section 1322(b)(2) provides in relevant part:

> (b) Subject to subsections (a) and (c) of this section, the plan may –
>
>     \*    \*    \*
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,…

11 U.S.C. § 1322(b)(2).

While subsection (b)(2) dictates a rather inflexible treatment for claims secured by a debtor's principal residence, Section 1322(c)(2) rights the balance somewhat by dampening what would otherwise be a significant, and frequently insurmountable consequence for debtors. That subsection states,

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law –

---

[4] In the Motion for Relief and FNMA's Objection, the creditor seemed to assert that (1) because Fredcrest Road was not titled in the Debtor's name it was not property of the estate and (2) because there was no privity of contract between it and the Debtor, the Debtor could not modify FNMA's secured debt.  However, these contentions, if they were asserted, have been abandoned in FNMA's Memorandum.

5

> \* \* \*
>
> (2) in a case in which the last payment on the original payment scheduled for a claim secured only by a security interest in real property that is the debtor's principal residence is due *before the date on which the final payment under the plan is due*, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. §1322(c)(2) (emphasis supplied).

      Debtor asserts that subsection (c)(2) should be interpreted to allow him to modify the payment terms of the Deed of Trust, retain Fredcrest Road and pay down the debt over time in an orderly fashion. He takes this position notwithstanding FNMA's express contractual right to accelerate. The Debtor primarily relies upon *In re Brown*, 428 B.R. 672 (Bankr. D. S.C. 2010), a case that, for all practical purposes, is on all fours with this one. Likewise, *In re Carter*, No. 09-35587, 2009 WL 5215399, at \*3 (Bankr. S.D. Tex. Dec. 28, 2009) and *In re Wilcox*, 209 B.R. 181, 183 (Bankr. E.D. NY. 1996) wrestled with precisely the same issue: can payment terms under a reverse mortgage secured by a principal residence be modified under a Chapter 13 plan, contrary to the mortgage's express language? Each case provides a thorough analysis of the relevant provisions of the Code and all three hold that the Debtor's position is the correct one.

      In *Brown*, Judge Waites summarized the crucial facts as follows:

> Debtor's mother died on October 10, 2007, and Debtor inherited title to the Property. Under the terms of the Note and Mortgage, the full and final payment of the debt owed to Financial Freedom was accelerated and became immediately due upon the death of Debtor' mother. The loan was called and foreclosure proceedings were commenced prior to the filing of this case… .
>
> \* \* \*
>
> On December 17, 2009, Debtor filed her chapter 13 plan, wherein she proposes to pay Financial Freedom the total outstanding indebtedness of $29,524.44, plus 5.25% interest, over a period of 60 months at a rate of $561.00 per month.

6

\*   \*   \*

> Financial Freedom objects to confirmation of the plan, asserting that…its treatment…is impermissible because Debtor is unable to cure the default under 11 U.S.C. § 1322(b)(5)… .

428 B.R. at 674.

The creditor in *Brown* made the same argument as FNMA in this case: because the debt was secured by the debtor's principal residence and had been fully accelerated before the filing of the petition, modification was barred by Section 1322(b)(2) and the obligation could not be 'decelerated' per Section 1322(b)(5).

In response, Judge Waites wrote,

> [W]ith respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the chapter 13 plan is due, debtors are permitted under § 1322(c)(2) to modify a mortgage creditor's rights by proposing in their plan to pay the mortgage creditor in full over the course of the bankruptcy.

*Id*. at 675.

Judge Waites observed that instead of creating an irreversible right to immediate payment in this context, it was precisely because the note had been accelerated that "the last payment" on the debt had been "moved to a date that was prior to the date of the final payment" that would be made under the Debtor's proposed plan thus bringing the secured claim within the reach of Section 1322(c)(2).[5] *Id*. at 676.

The creditor in *Brown* (as does FNMA here) also relied upon the unreported case of *In re Henry*, 153 Fed. Appx. 146 (4th Cir. 2005). But that case is not binding precedent and perhaps more importantly (and although the subject property apparently was a principal residence), the Fourth Circuit did not consider the effect of Section 1322(c)(2) on the outcome. Until the Circuit

---

[5] As noted by Judge Waites, acceleration means, "the advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately." *Id*. (citing *Black's Law Dictionary* 11 (7th ed. 1999)).

7

Court makes that analysis in this factual context and expressly reconciles the two opposing subsections, it would be inappropriate to rely upon *Henry* to reject the Debtor's claim.

It is settled in this Circuit that Congress enacted Section 1322(c)(2) in 1994 in part to overrule *First National Fidelity Corp. v. Perry* (*In re Perry*), 945 F.2d 61 (3d Cir. 1991) which held that Section 1322(b)(2) barred a debtor from utilizing Section 1325(a)(5) to decelerate a loan already in foreclosure that was secured by the debtor's principal residence. *See Witt v United Companies Lending Corp.* (*In re Witt*), 113 F.3d 508, 512 (4th Cir. 1997) (Section 1322(c)(2) was enacted to permit the cure of a defaulted 'principal residence' obligation through the modification of the payment terms); *see also In re Escue*, 184 B.R. 287 (Bankr. M.D. Tenn. 1995) (Congress, by enacting Section 1322(c)(2), intended to allow debtors to cure a mortgage indebtedness which matures or balloons prepetition by providing for full payment of the mortgage over the life of the plan).

It is true that *Witt* did not deal with the precise question presented here.  Indeed, *Witt* held against a general expansion of Chapter 13 debtor rights by concluding that Section 1322(c)(2) did not overrule *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993).[6]  In *Witt*, the essential question presented reduced to whether Section 1322(c)(2) was intended to permit modification of principal residence secured 'claims' in general or just the '*payment* of the claim'. *Witt* limited the subsection's scope to the latter.  Nevertheless the Court implied, in both its reasoning and in *dicta*, that Section 1322(c)(2) should be interpreted as permitting the modification of payment terms even when the debt is due in full ─ whether by maturity or

---

[6] In *Nobelman*, the Supreme Court held that a claim secured only by a principal residence could not be bifurcated under Section 506(a) consistently with Section 1322(b)(2). 508 U.S. at 332.

8

default ─ prior to the proposed date of the final payment under the plan.[7] Viewed in that light, FNMA's Deed of Trust certainly seems to fall into the general class of secured indebtedness covered by Section 1322(c)(2)'s plain language.

FNMA also relies heavily upon *In re Gianguzzi*, 145 B.R. 792 (Bankr. S.D. N.Y. 1992) wherein the bankruptcy court relied upon Section 1322(b)(2) to stop the debtor's attempt at modifying and paying over the life of the plan a fully matured principal residence mortgage. However, *Gianguzzi* was decided before Section 1322(c)(2)'s enactment and did not have to deal with that subsection's significant impact on the confirmation landscape. For present purposes, *Gianguzzi* can safely be disregarded.

The Court agrees with the reasoning and holding of *Brown*, *Carter* and *Wilcox*. This is so mainly because the language of Section 1322(c)(2), and *Witt's* reasoning, seem plain in requiring that result. Section 1322(b)(2), the older subsection, permits the modification of secured claims generally but not when the claim is secured by the debtor's principal residence. Section 1322(c)(2), the newer subsection, was enacted to expand the rights of debtors with respect to secured claims against principal residences but only within the confines of the subsection's precise language; i.e., where the last payment according to the original payment schedule is due prior to the proposed final payment under the debtor's plan. If it is, then the payment of the secured claim can be modified. Thus it would seem to require a real stretch of interpretation to exclude the Deed of Trust in this case whose "final payment" has, by its own terms and the creditor's assertion, already come due.

---

[7] Admittedly, this interpretation seems to conflict with *Henry*. Nevertheless, it bears repeating that *Henry* is an unreported opinion that did not discuss Section 1322(c)(2) and moreover, in *Perry* (the case overturned by the enactment of Section 1322(c)(2)), the Third Circuit was confronted with a secured claim that was defaulted, accelerated and completely due and payable prepetition.

None of the rest of the cases cited by FNMA hold that a secured claim accelerated prepetition cannot be paid in full through the plan under Section 1322(c)(2). Most instead point to Section 1322(c) as representative of the repayment flexibility that should be allowed a debtor with respect to the treatment of mortgage debt under a chapter 13 plan. *See In re Litton*, 330 F.3d 636, 645 (4th Cir. 2003) (holding that Section 1322(b)(5) permitted the cure of a default under a consent agreement that expressly barred modification in any future bankruptcy proceeding) [8]; *In re Watson*, 190 B.R. 32, 37 (Bankr. E.D. Pa. 1995) (citing the enactment of Section 1322(c)(2) as evidence that a debtor should be allowed to repay a nonresidential mortgage which fully matured prepetition); *In re Millard*, 414 B.R. 73, 77 (D. Md. 2009) ("The enactment of § 1322(c)(2) suggests that Congress did not intend the anti-modification provision to apply indiscriminately to all liens secured by residential mortgages."). Not a single case cited by FNMA holds that an accelerated reverse mortgage cannot be cured under the provisions of Section 1322(c)(2). The Court agrees with the view that the Debtor should be permitted to modify the payment of the claim arising from the Deed of Trust under Section 1322(c)(2) and therefore will overrule FNMA's Objection that asserts he cannot.

B.  *Effect of Joint Ownership*

FNMA's fallback position rests on the fact that Debtor is not the sole heir to his mother's estate. Since he and his sister will share ownership of Fredcrest Road and his sister is not in bankruptcy, the argument goes, she is a missing 'necessary party' and the Debtor cannot modify the loan without her presence as a debtor in this Court. FNMA relies upon *In re Gottron*, No. 11-bk-20773, 2012 WL 907489, slip op. (Bankr. D. Md. Mar. 16, 2012) and *Alvarez v. HSBC Bank USA, N.A.*, No. 8:11-cv-02886, 2011 WL 6941670, slip op., (D. Md. Dec. 28, 2011) in

---

[8] FNMA mischaracterizes *In re Litton* by stating that the Fourth Circuit deemed a default cure impermissible. To the contrary, Litton allowed the cure under Section 1322(b)(5). 330 F.3d at 645.

10

support of this claim.  However, neither of these cases dealt with loan modification under Section 1322.  Rather, the question presented in each was whether a married debtor has standing to prosecute the avoidance of a lien on property owned as tenants by the entirety when the spouse has not filed bankruptcy.  Both opinions held that individual married debtors do not have the requisite standing under Section 506(a) and therefore lien avoidance was not allowed.  However, tenants by the entirety property has a defining characteristic that is not present in this case.

The tenants by the entirety estate is a single entity that blossoms from marriage.  That premise is at the core of *In re Hunter*, 284 B.R. 806 (Bankr. E.D. Va. 2002) (relied upon by both *Alvarez* and *Gottron*) where the bankruptcy court, after a lengthy analysis that considered the unique estate in depth, concluded that a single filing spouse cannot modify a mortgage to which both spouses are parties and which is secured by real estate owned as tenants by the entirety.[9]  To overstate the obvious, the Debtor and his sister are not married and therefore cannot own Fredcrest Road as tenants by the entireties.  Modification of the Deed of Trust under the Debtor's plan will positively affect the Debtor's sister's interests as it should help to preserve her ownership interest in the real estate.  However, outcomes in bankruptcy frequently have an impact on non-debtors and that, standing alone, is insufficient to thwart the strategy. Without a more cogent argument that does not rely upon the unique – and here, nonexistent – estate of tenants by the entirety, FNMA's premise is fatally flawed. Accordingly, FNMA's Objection on that basis is likewise unsound and its Objection will be overruled.

---

[9] In *Gottron*, Judge Catliota also in part relied upon the plain language of Section 506(d) which limits the effective reach of Section 506(a) to, "a claim against the debtor".  2012 WL 907489, at *2.  Moreover, all three cases were considering the possible complete nullification of a lien as opposed to a less drastic modification of its payment terms.

11

    C.    *Interest Rate*

FNMA's Objection also complains about the Plan's proposed interest rate. At the last hearing, the Court suggested that if this Opinion came out in the Debtor's favor then the parties should work out a compromise of that issue and, failing that, the Court would hold an evidentiary hearing to resolve the matter. Accordingly, if the interest rate is not resolved by consent, the Court will hold an evidentiary hearing on the same.

**VI.**    **Conclusion**

In conclusion, the Court finds that FNMA's secured claim may be modified under the Debtor's plan. A separate order memorializing these rulings shall be entered.


cc:    Robert Anthony Griffin, Debtor
5218 Fredcrest Road
Baltimore, Maryland 21229

Robert Grossbart, Counsel for Debtor
Grossbart, Portney & Rosenberg
One N. Charles Street, Suite 1214
Baltimore, Maryland 21201

Nancy Spencer Grigsby, Trustee
4201 Mitchellville Road, Suite 401
Bowie, Maryland 20716

Christina M. Williamson, Counsel for FNMA
4520 East West Highway, Suite 200
Bethesda, MD 20814


**End of Opinion**